# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES COOPER, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-0326 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

James Cooper, a state inmate proceeding *pro se*, seeks habeas corpus relief under 28 U.S.C. § 2254 challenging his state murder conviction.  Respondent filed an answer, which the Court construed as a motion for summary judgment.  (Docket Entry No. 7.)  In compliance with the Court's order, petitioner filed a response to the motion.  (Docket Entry No. 11.)

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS summary judgment and DISMISSES this case.

### Procedural Background

Petitioner was convicted of murder and sentenced to forty-five years incarceration. The conviction was affirmed on appeal.  *Cooper v. State*, No. 10-04-0169-CR (Tex. App. – Waco 2005, pet. ref'd) (not designated for publication).  The Texas Court of Criminal Appeals refused discretionary review.  No application for state habeas relief was filed.

Petitioner raises the following grounds for federal habeas relief:

    (1)    insufficiency of the evidence;

    (2)    ineffective assistance of trial counsel in:

        (a)    failing to make an opening statement;

        (b)    failing to prepare petitioner to testify;

        (c)    failing to request a limiting instruction on prior convictions;

        (d)    introducing into evidence three remote prior convictions;

        (e)    failing to request a lesser-included offense charge;

        (f)    failing to introduce mitigating evidence at punishment; and

        (g)    discussing parole law during closing argument.

Respondent argues that these grounds fail as a matter of law.

*Factual Background*

The state appellate court set forth the following statement of facts in its opinion:

The indictment alleges two alternative legal theories and two manners and means by which [petitioner] committed the offense.  First, the indictment alleges that [petitioner] caused the death of Craig Hoyer by striking Hoyer with his hand or by kicking him.  Second, the indictment alleges that [petitioner] intended to cause serious bodily injury to Hoyer and caused his death by committing an act clearly dangerous to human life, namely, hitting Hoyer with his hand or kicking him.

The evidence reflects that Hoyer lived in the same house with the Cooper brothers.  On the date in question, some of the State's witnesses testified that Hoyer and the Coopers had gotten into an argument then went outside.  The witnesses generally testified that the Coopers were hitting and kicking Hoyer.  One stated that [petitioner's brother] was holding Hoyer in a neck hold while

2

[petitioner] was hitting and kicking him.

[Petitioner] testified that Hoyer attacked him for no apparent reason while [he] was outside.  He said that Hoyer rushed out of the house and hit him upside the head.  During the struggle which ensued, [petitioner] stated that he thought Hoyer hit his head on the bumper of a nearby truck.  [Petitioner] at first thought that Hoyer was feigning unconsciousness, but when he realized that Hoyer was actually unconscious, he ran inside and called 911.

A medical examiner testified that Hoyer died from '[b]lunt impact trauma to the head and neck.'  She described numerous injuries he had sustained: multiple internal injuries at the back of the head, multiple contusions on the right scapula, multiple contusions in the left lateral mid area of the back; a laceration to the right vertebral artery; and a laceration to the liver.

*Cooper*, at *1 (citations omitted).

*The Applicable Legal Standard*

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state court adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2).  A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent.  *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409.  In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable.  *See id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues.  Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding.  *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003).  A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

## Insufficiency of the Evidence

Petitioner argues that the evidence is legally and factually insufficient to support his murder conviction and to disprove his affirmative defense of self-defense.  Contentions regarding factual insufficiency of the evidence are strictly matters of state law, not federal Constitutional law, and cannot support relief in a federal habeas case. *Pemberton v. Collins*,

991 F.2d 1218, 1224 (5th Cir. 1993). Accordingly, petitioner's factual sufficiency challenges are without merit.

Petitioner's legal sufficiency challenges raise cognizable federal habeas claims. In habeas proceedings in the federal courts, the sole consideration regarding sufficiency of the evidence is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. In conducting that review, a federal habeas court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the prosecution. *Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995). All credibility choices and conflicting inferences are to be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). Moreover, federal courts are obliged to pay great deference to the state appellate court's analysis of the evidence and its determination concerning the sufficiency of the evidence to uphold the verdict. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993).

In overruling petitioner's legal sufficiency challenge, the state court of appeals in the instant case held as follows:

> Several witnesses testified that they saw [petitioner] and/or [his brother] hitting and/or kicking Hoyer immediately before his death. One of the State's witnesses testified that [the brother] held Hoyer by the neck while [petitioner] was hitting and kicking him. The medical examiner opined that Hoyer's injuries were consistent with the conduct described by the State's witnesses. Thus, the evidence is legally sufficient to prove that [petitioner], either

individually or as a party, acted with intent to cause death or serious bodily injury to Hoyer.

*Cooper*, at *2 (citation omitted).

Under section 19.02(b) of the Texas Penal Code, a person commits an offense of murder if he (1) intentionally or knowingly causes the death of an individual, or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Petitioner was charged with causing Hoyer's death under the two alternative legal theories of sections 19.02(1) and (2): by striking complainant with his hand or by kicking him, or by intending to cause serious bodily injury to complainant and causing his death by committing an act clearly dangerous to human life, namely, hitting him with his hand or kicking him. The jury's charge tracked the language of the statute and indictment.

The state court of appeals' findings in its opinion are supported by the record, and are in accord with this Court's independent review of the record. At trial, the State's witnesses testified to seeing petitioner and his co-defendant twin brother repeatedly hitting and kicking Hoyer. R.R. Vol. 4, pp. 85-86, 90, 129. One witness testified that when he tried to intercede to help Hoyer, petitioner or his brother told him it "wasn't any of [his] business," and if he "didn't leave it alone, [he] was going to get the same thing." *Id*., p. 91. The witness testified that Hoyer was on the ground, not fighting back. *Id*., p. 92. Another witness testified that petitioner and his brother had Hoyer in a choke hold around the neck, kicking, stomping. and punching him. *Id.*, p. 129. A third witness stated that shortly before the incident, petitioner, his brother, and Hoyer argued about living arrangements at the Cooper house where Hoyer

6

had been staying.  Hoyer was told to move out of the house and became "huffy," slamming the front door behind him as he left.  *Id*., pp. 152-53.  Petitioner followed him outside, and the witness heard them arguing.  The witness looked outside and saw petitioner and his brother kicking Hoyer "pretty hard."  *Id*., pp. 155, 158.  Hoyer was on the ground, unable to get back up.  *Id*., p. 159.  Petitioner's brother told Hoyer "to get up [mother f----r]" and "gave him a final kick [but] he didn't move."  *Id*., p. 160.  The medical examiner testified that Hoyer's multiple head injuries, liver laceration, and other injuries were consistent with the conduct described by the witnesses, and that he died from blunt impact trauma to the head and neck.  R.R. Vol. 5, pp. 88-90.  The medical examiner specifically testified that Hoyer's injuries were not consistent with a single fall.  *Id*., p. 92.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  The evidence is sufficient to support petitioner's conviction under *Jackson*.  Accordingly, respondent is entitled to summary judgment dismissing petitioner's claim of legally insufficient evidence.

Petitioner further claims that the evidence is legally insufficient to disprove his affirmative defense of self-defense.  Under section 9.31(a) of the Texas Penal Code, a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force.  The jury in petitioner's case was instructed in and charged

with the application of this provision to petitioner's affirmative defense claim of self-defense.

In overruling petitioner's insufficiency challenge to the jury's refusal to find in favor of his self-defense claim, the state court of appeals held as follows:

> [Petitioner] argues in his second and fourth points respectively that the evidence is legally and factually insufficient to disprove that he acted in self-defense.
>
> These points revolve around [petitioner's] testimony that Hoyer attacked him and struck his head on a bumper during the ensuing struggle, the medical examiner's testimony that one of Hoyer's head injuries could have been caused by falling and striking his head on a bumper, and [petitioner's] testimony that he called 911 when he realized Hoyer was unconscious.
>
> However, [petitioner's] version of the events is inconsistent with the injuries sustained by Hoyer as described by the medical examiner. Thus, [petitioner's] claim of self-defense rested on credibility. The jury is the ultimate fact finder on issues of credibility, and by its verdict, the jury chose to believe the State's witnesses. We must defer to the jury in its resolution of such issues. Accordingly, we cannot say that the evidence is legally or factually insufficient to disprove self-defense.

*Cooper*, at *2 (citations omitted).

The state court of appeals' findings in its opinion are supported by the record, and are in accord with this Court's independent review of the record. Petitioner testified that he and Hoyer had been friends before the incident. As Hoyer was having financial problems, petitioner offered to rent him a room in the house he shared with his co-defendant brother. R.R. Vol. 5, pp. 127-28. Petitioner stated that on the afternoon of the offense, he was on the front porch of the house when Hoyer rushed out and "bust me upside the head." *Id*., p. 138. Petitioner's brother had told Hoyer to move out of the house. *Id*., Vol. 6, p. 41. Petitioner

and Hoyer struggled, with petitioner holding on to Hoyer because "he almost knocked me

out."  Petitioner testified that:

> We were struggling between the cars and then we struggled on up to the edge
> of the driveway, and that's when – we were struggling and he slipped.  And I
> think he hit his head on the bumper of the truck.  I fell back, I fell back the
> other way towards the neighbor's yard.  And I got up.

*Id*., Vol. 5, p. 138.  Petitioner continued:

> I ran – okay, I got up.  I had fell backwards, and when I got up, I came over
> there to him and I seen him, he was laying out, he was unconscious.  So, I
> thought he was playing.  And he was on his side when he fell back.  And I told
> him, I said, man, you need to get up.  I'm going to tell your mother how you
> been acting over here, and he didn't say nothing.  I thought he was playing.
> I took my foot and I tried to pull him over because – plus, I thought he was
> going to hit me again.  So, I kneeled down[.]

*Id*., p. 139.  When he realized Hoyer was injured, he called for an ambulance.  Petitioner

testified that he was trying to defend himself from Hoyer's aggression, but never kicked him.

*Id*., p. 142.  He thought Hoyer probably hit his head on the bumper of a truck parked in front

of the house.  *Id*., p. 146.  He testified that the physical "tussle" lasted five or six seconds,

and that his brother was not involved in the fight.  *Id*., pp. 150-51.  Petitioner argues that the

evidence was legally sufficient to establish his affirmative defense of self-defense.

As observed by the state appellate court, petitioner's claim of self-defense is based

largely if not wholly on his own testimony, which conflicted with that of the State's

witnesses and the medical testimony.  Petitioner denied hitting or kicking Hoyer, yet the

medical examiner described multiple injuries, including a lacerated liver, inconsistent with

a single fall. Petitioner denied his brother was involved, yet witnesses testified that petitioner

9

and his brother held Hoyer in a headlock while punching, kicking, and stomping him. Petitioner stated that he "didn't know" how Hoyer's other injuries occurred. Under the federal standard of review for this Court's analysis of petitioner's evidentiary challenge, all credibility choices and conflicting inferences are to be resolved in favor of the jury's verdict. *See Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). In the instant case, the jury resolved the credibility and conflicting evidence issues in favor of the State's witnesses and against petitioner. These are not determinations open to reevaluation by this Court on habeas review.

The state court of appeals' findings in its opinion regarding petitioner's claim of self-defense are supported by the record and are in accord with this Court's independent review of the record. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly-established federal law or in the state court's determination of facts in light of the evidence. Petitioner merits no relief under *Jackson*. Accordingly, respondent is entitled to summary judgment dismissing petitioner's claim of legally insufficient evidence to disprove self-defense.

*Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To

assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness

11

does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled.  *Id.*

*Ineffective Assistance at Guilt-Innocence*

Petitioner claims that trial counsel was ineffective during guilt-innocence in the following respects: (1) failing to make an opening statement; (2) inadequately preparing petitioner to testify at trial; (3) failing to request a limiting instruction for petitioner's prior convictions; (4) offering into evidence petitioner's remote prior convictions; and (5) failing to request an instruction on the lesser-included offense of manslaughter.

In overruling petitioner's claims regarding counsel's failures to make an opening statement or prepare him to testify, the state court of appeals held as follows:

> We begin with a 'strong presumption' that counsel provided reasonably professional assistance, and an appellant bears the burden of overcoming this presumption.  Generally, the appellate record is insufficient to satisfy this burden.  In the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel.
>
> Counsel's failure to make an opening statement and his alleged failure to adequately prepare [petitioner] to testify will generally not support a finding of ineffective assistance on direct appeal.

*Cooper*, at *3 (citations omitted).

Petitioner raised his ineffective assistance claims solely on direct appeal, and did not pursue state habeas relief.  Ineffective assistance claims generally are not reviewable on direct appeal because the record has not yet been established before the district court.  *See United States v. McIntosh*, 280 F.3d 479, 481 (5th Cir. 2002).  Indeed, as the Fifth Circuit

has noted, claims of inadequate representation can be resolved on direct appeal only in rare cases where an adequate record allows a fair evaluation of the merits of the claim. *Id.*; *see also United States v. Lampaziane,* 251 F.3d 519, 523 (5th Cir. 2001).

No hearing on a motion for new trial, or any post-conviction affidavits regarding ineffective assistance of counsel, appear in the state court record.  By raising only on direct appeal his ineffective assistance of counsel claims, petitioner limited himself to arguing and proving his claims through the state court trial record.  As correctly and reasonably determined by the state court of appeals, the record on direct appeal is simply undeveloped and cannot adequately reflect the alleged failings of trial counsel in failing to make an opening statement or in not adequately preparing petitioner to testify at trial.  The bare fact that counsel made no opening statement establishes neither deficient performance nor prejudice.  Nor does the record reveal that trial counsel did or did not adequately prepare petitioner to testify at trial.  Consequently, petitioner fails to rebut the strong presumption afforded by *Strickland* that counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy.

Nor does petitioner merit federal habeas relief under his claim that counsel failed to request a limiting instruction for petitioner's prior convictions.  In denying relief on this claim, the state court of appeals held as follows:

> The trial court provided two instructions in the guilt-innocence charge regarding evidence of extraneous offenses (including convictions).  One instructed the jury that it could not consider this evidence for any purpose unless the jury was convinced beyond a reasonable doubt that [petitioner] had

> committed the extraneous offenses.  The other instructed the jury that this
> evidence should be considered, if at all, only for evaluating the weight to be
> given [petitioner's] testimony.
>
> Because the court provided these instructions to the jury, [petitioner] cannot
> show 'a reasonable probability that, but for counsel's [failure to request a
> limiting instruction], the result of the proceeding would have been different.'

*Cooper*, at *4.

The state appellate court correctly ascertained the record inclusion and effect of the

two jury instructions regarding petitioner's prior convictions.  Because the trial court

provided these instructions to the jury, petitioner cannot demonstrate prejudice; that is, he

cannot show a reasonable probability that, but for counsel's failure to request a limiting

instruction, the result of his trial would have been different.  *Strickland*.  The state court's

findings and determinations of this issue were reasonable, and no federal habeas relief is

merited.

Petitioner's claim regarding counsel's failure to request a lesser-included jury charge

is equally unavailing.  The state appellate court relied on state law in denying this claim, as

shown by the following:

> Regarding counsel's failure to request an instruction on the lesser-included
> offense of manslaughter, counsel is not ineffective in failing to request such
> an instruction if it is not supported by the evidence.
>
> Under the evidence, no rational trier of fact could have found that, if
> [petitioner] was guilty, he was guilty of only manslaughter because no rational
> trier of fact could have concluded that [petitioner] acted only recklessly.  Thus,
> [petitioner] would not have been entitled to an instruction on the lesser-
> included offense of manslaughter.  Accordingly, we cannot say his counsel
> rendered ineffective assistance by failing to request such an instruction.

*Cooper*, at *4 (citations omitted).

The state court held that under the evidence presented at trial, petitioner was not entitled to an instruction on the lesser-included offense of manslaughter because no rational trier of fact could have found that petitioner acted only recklessly.  It is not the province of this Court to review decisions reached by state courts under state law, and the state court's interpretation of state law is binding on this Court.  *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).  Consequently, counsel was not deficient in failing to make a groundless request for a jury instruction on the lesser-included offense of manslaughter.  *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

As his final argument claiming ineffective assistance of counsel at the guilt-innocence phase of trial, petitioner contends that counsel erroneously introduced into evidence otherwise inadmissible prior convictions.  The state court of appeals denied this claim for the following reasons:

> Regarding evidence of prior convictions, it has been held that there can be no reasonable trial strategy for defense counsel to offer evidence of his client's 17-year-old murder conviction during the guilt-innocence phase of a narcotics case.  In that case however, it was noted that this prior conviction would not be admissible for impeachment purposes because of its remoteness.
>
> Here however, defense counsel offered in evidence a series of prior theft and felony convictions: theft convictions from 1981, 1989, 1994, 1996, and 1997; a 1989 conviction for burglary of a motor vehicle (listed as an enhancement allegation in the indictment); and a 1990 conviction for possession of a controlled substance (also listed as an enhancement allegation).
>
> Under Rule of Evidence 609(b), the admissibility of the four oldest convictions (from 1981, 1989(2), and 1990) for impeachment purposes would depend on

15

whether their probative value substantially outweighed the danger of unfair prejudice. *See* Tex. R. Evid. 609(b). Because of the impeachment value of the remote theft convictions, because Cooper had a continuing record of criminal misconduct during the ten years immediately preceding the date of the present offense, and because of the importance of [petitioner's] testimony and his credibility, the trial court would have been well within its discretion to admit evidence of the older convictions.

Because the older convictions were admissible for impeachment purposes and because the State had already given notice of its intent to use these convictions at trial, we cannot fault defense counsel for preemptively introducing them at the beginning of [petitioner's] direct examination.

*Cooper*, at *3-4 (citations omitted).

The state court of appeals noted that under state law, there can be no reasonable trial strategy in a trial counsel's offering evidence of inadmissible prior convictions during guilt-innocence. The court determined, however, that petitioner's particular prior convictions were admissible under state law. As stated above, this Court cannot review decisions reached by state courts under state law, and the state court's interpretation of state evidentiary law is binding on this Court for purposes of petitioner's *Strickland* claim. *Weeks*, 55 F.3d at 1063. This Court agrees with the state appellate court that it "cannot fault defense counsel for preemptively introducing [the convictions] at the beginning of [petitioner's] direct examination." *Cooper*, at *4. Counsel's decision to introduce the admissible convictions on a preemptive basis was a matter of reasonable trial strategy that will not be second guessed by this Court. *See Coble v. Quarterman*, 496 F.3d 430, 439 (5th Cir. 2007) ("Trial counsel's decision to admit these damaging documents before the State was able to introduce them, and soften their potential damage, is a reasonable trial strategy and will not be second guessed.").

The state court of appeals denied relief under these issues.  Petitioner fails to show that the state court's determinations were contrary to or involved an unreasonable application of *Strickland* or were unreasonable determinations of the facts based on the evidence in the record.  Respondent is entitled to summary judgment on these issues of ineffective assistance of counsel at the guilt-innocence phase of trial.

*Ineffective Assistance at Punishment*

Petitioner contends that counsel was ineffective during the punishment phase of trial by failing to present mitigating evidence, and by discussing the application of parole law to petitioner's potential sentence during closing argument.

In overruling petitioner's claim that counsel was ineffective in failing to present mitigating evidence at the punishment hearing, the state court of appeals held as follows:

> A claim that counsel was ineffective for failing to present mitigating evidence cannot succeed on direct appeal if the appellant does not identify the particular evidence which counsel failed to present and if counsel is not given an opportunity to explain his trial strategy.  Here, [petitioner] observes in his brief only generally that 'a number of' his friends were available to testify, that his brother and co-defendant John 'could have been asked some questions that might have helped humanize [petitioner],' and that he 'could have testified himself with regard to whatever remorse he felt about the complainant's death.'

> Ineffective assistance claims must 'be firmly founded in the record.' [Petitioner's] general allegations of potential mitigating evidence do not satisfy this test.

*Cooper*, at *4-5 (citations omitted).

17

In denying relief under petitioner's first claim of ineffective assistance at the punishment phase of trial, the state court correctly reiterated that claims of ineffective assistance must "be firmly founded in the record," and that petitioner's were not. *Cooper*, at *5. Petitioner's conclusory allegations of omitted "mitigating evidence" are unsupported in the record and are insufficient to raise a genuine issue of material fact precluding summary judgment. Nor does petitioner show that, but for counsel's failure to present such "mitigating evidence," his punishment would have been significantly less harsh. *See Spriggs v. Collins*, 993 F.2d 85, 88-89 (5th Cir. 1993). No ineffective assistance of counsel is shown.

Petitioner also complains that counsel informed the jury of the application of parole law to his potential sentence during closing argument at the punishment hearing. In denying relief on this issue, the state court of appeals held as follows:

> The record reflects that counsel tried to use the parole law to [petitioner's] advantage by encouraging the jury to assess the minimum punishment of twenty-five years because he would be seventy-two years' old on the earliest date at which he would be eligible for parole. [FTN. [Petitioner] was indicted as a habitual felon. Because this was a 3g offense, [petitioner] will not be eligible for parole until he has served one-half of his sentence.] We can only speculate as to the wisdom of this strategy. However, 'that a trial strategy does not work does not mean that counsel was ineffective.'

*Cooper*, at *5.

As already noted here, no hearing on a motion for new trial or any post-conviction affidavits raising ineffective assistance of counsel appear in the state court record, and petitioner did not file an application for state habeas relief. By raising only on direct appeal this claim for ineffective assistance of trial counsel, petitioner limited himself to arguing and

18

proving his claim through the state court trial record.  The bare fact that counsel referenced the potential effect of parole law on petitioner's punishment establishes neither deficient performance nor prejudice.  The state court was of the opinion that counsel "tried to use the parole law to [petitioner's] advantage by encouraging the jury to assess the minimum punishment," given petitioner's advanced age of sixty at the time of trial.  The state court's determination that this was not an unreasonable trial strategy was, itself, not an unreasonable application of *Strickland*.  Petitioner fails to rebut the strong presumption afforded by *Strickland* that counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy.  Petitioner also fails to show that but for counsel's deficiency in this respect, his punishment would have been significantly less harsh.  *See Spriggs*, 993 F.2d at 88-89.

Moreover, the trial court instructed the jury in the punishment charge that they could "consider the existence of the parole law," but were not "to consider the manner in which the parole law may be applied to this particular defendant."  Clerk's Record at 166.  A jury is presumed to follow the instructions of the trial court, *Galvan v. Cockrell*, 293 F.3d 760, 766 (5th Cir. 2002), and nothing in the record before this Court rebuts that presumption.

The state court of appeals denied relief under these issues.  Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the

record.  Respondent is entitled to summary judgment on these issues of ineffective assistance of counsel at the punishment phase of trial.

*Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 7) is GRANTED. The petition for a writ of habeas corpus is DENIED, and his case is DISMISSED WITH PREJUDICE.  A certificate of appealability is DENIED.  Any and all pending motions are DENIED AS MOOT.

The Clerk is to provide a copy of this order to all parties.

Signed at Houston, Texas on March 18, 2008.

Gray H. Miller
United States District Judge

20